[No. B125227. Second Dist., Div. Seven. Aug. 18, 1999.]

DENNIS A. HARRIS, Plaintiff and Appellant, v.
RUDIN, RICHMAN & APPEL et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

## COUNSEL

Parker, Mills & Patel, David B. Parker, Jayesh Patel and Alicia J. Gonzales for Plaintiff and Appellant.

Heenan Blaikie and Fred A. Fenster for Defendants and Respondents.

## OPINION

**JOHNSON, J.**—Plaintiff and appellant Dennis A. Harris (Harris) appeals from the judgment of dismissal after the trial court sustained, without leave to amend, defendants' demurrer to Harris's complaint for breach of written contract and intentional infliction of emotional distress. Harris's appeal challenges both the trial court's denial of his motion to enforce a settlement agreement under Code of Civil Procedure section 664.6, and the order sustaining the demurrer without leave to amend. We affirm the court's denial of Harris's motion to enforce the settlement agreement pursuant to Code of Civil Procedure section 664.6 on the ground the requirements of that section were not satisfied. We also affirm the portion of the judgment sustaining the demurrer without leave to amend as to both causes of action for intentional infliction of emotional distress but reverse the judgment with respect to the cause of action for breach of contract.

### FACTS AND PROCEEDINGS BELOW

Harris retained the law firm of Rudin, Richman & Appel (RR&A) to draft an irrevocable trust for him. Harris later filed a malpractice claim against RR&A, Milton Rudin, Fredric Richman, Martin Appel, Raymond Kaplan and Jeffrey Berkowitz (collectively respondents), claiming their negligence

in supervising and drafting the trust exposed the trustees to personal liability for gift and estate taxes. Thereafter, Harris and respondents engaged in settlement negotiations which Harris claims resulted in a settlement agreement. Harris alleges the terms of the purported settlement agreement were set forth in a letter (the Letter) from respondents' counsel to Harris's counsel.

The Letter, which is at the heart of this dispute, reads: "I am writing to confirm the essential terms of the settlement we reached today. The present defendants in this matter will pay [Harris] a total of $205,000 in exchange for a general release of, and complete protection against, all claims and potential claims against them arising from or related to the Dennis A. Harris Irrevocable Inter Vivos Trust Agreement. This office will prepare the initial draft of the settlement documents, and you should inform the [c]ourt that the matter has been resolved as soon as is reasonably practicable. Additionally, per your request . . . Mickey Rudin and Marty Appel personally acknowledge the terms of the settlement on this confirmation correspondence." Respondents Rudin and Appel both signed the Letter under a notation reading "[a]ccepted and agreed." Neither Harris, nor respondents Richman or Berkowitz signed the Letter.[1]

At a pretrial conference and then again on the scheduled trial date, both parties represented to the court the matter had been settled and final documentation was being prepared. The court continued the trial date based on these representations. Before this "final documentation" was completed, respondents learned of a new addition to the Probate Code which they believed nullified their potential malpractice liability. Respondents notified Harris's counsel that in light of the passage of the new law, "our side is left with no real choice but to take the $205,000.00 settlement arrangement off the table . . . ."

Thereafter, Harris brought a motion to enforce the settlement agreement pursuant to Code of Civil Procedure section 664.6. The court denied the motion on the ground the statutory prerequisites of section 664.6 had not been satisfied. The court reasoned not all of the parties in the action signed the Letter. Harris was granted leave to amend his complaint to add a new cause of action for breach of written contract, and two new causes of action, against Appel and Berkowitz, respectively, for intentional infliction of emotional distress. The trial court sustained respondent's demurrer without leave to amend with respect to the causes of action for breach of written contract,

---

[1]We note defendant Raymond S. Kaplan was dismissed from the action several months before the settlement negotiations at issue on this appeal. He was not a defendant in the action at the time the Letter was drafted and is not a respondent party in this appeal.

and to both causes of action for intentional infliction of emotional distress; the court overruled the demurrer to the legal malpractice cause of action.

Later, Harris acknowledged the remaining malpractice claim was premature and moved to dismiss the complaint without prejudice. The court granted the motion and entered a final judgment against Harris.

## DISCUSSION

### I. *The Letter Was Not Enforceable as a Settlement Agreement Under Code of Civil Procedure Section 664.6.*

 Harris contends the trial court erred in denying his motion under Code of Civil Procedure section 664.6[2] to enforce the purported settlement agreement. Section 664.6 empowers a court to enforce a settlement agreement by way of a summary procedure if certain requirements are satisfied. (*Weddington Productions, Inc.* v. *Flick* (1998) 60 Cal.App.4th 793, 810 [71 Cal.Rptr.2d 265]; *Kilpatrick* v. *Beebe* (1990) 219 Cal.App.3d 1527, 1529 [269 Cal.Rptr. 52].) In order to take advantage of the statute's expedited procedure, a party must first establish the agreement at issue was set forth "in a writing signed by the parties" (§ 664.6) or was made orally before the court. (*Weddington Productions, Inc.* v. *Flick, supra,* 60 Cal.App.4th at p. 810.)[3]

In seeking to enforce the Letter as a settlement agreement under section 664.6, Harris acknowledges neither he nor defendants Richman or Berkowitz signed the Letter. Nevertheless, he argues the statute's requirement of a "writing signed by the parties" does not expressly require *all* the parties in the action to sign the settlement agreement. He likens section 664.6 to the statute of frauds requiring only the "part[ies] to be charged" to sign the writing. (See Civ. Code, § 1624.)

We reject Harris's statutory interpretation. In construing a statute, we must ascertain the legislative intent so as to effectuate the purpose of the law. (*Souza* v. *Lauppe* (1997) 59 Cal.App.4th 865, 871 [69 Cal.Rptr.2d 494].) We first examine the words of the statute. Where there is no ambiguity, the plain meaning of the language governs. (*Ibid.*) When the statutory

---

[2]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]The full text of section 664.6 reads: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

language is susceptible to more than one reasonable interpretation, we look to extrinsic aids, including legislative history, to give the provision " 'a reasonable and common sense interpretation consistent with [its] apparent purpose, which will result in wise policy rather than mischief or absurdity.' " (*People* v. *$1,930 U.S. Currency* (1995) 38 Cal.App.4th 834, 843 [45 Cal.Rptr.2d 322].)

▮ Applying these principles of statutory construction to section 664.6, we note the section expressly requires the writing to be signed by the "parties." Unlike Civil Code section 1624, the plain language of section 664.6 does not limit its signature requirement to the "party to be charged." Clearly, the Legislature knew how to so limit the statute as it did in the statute of frauds. Yet it did not do so in section 664.6. ▮ We cannot go beyond the plain meaning of the language used to ascribe a meaning to the statute not indicated by its plain language. (*Souza* v. *Lauppe, supra,* 59 Cal.App.4th at p. 871.)

▮ We read the statute's requirement of a writing "signed by the parties" to require the signatures of the parties seeking to enforce the agreement under section 664.6 and against whom the agreement is sought to be enforced. Although there is no direct authority interpreting the term "parties" in such a way, such an interpretation is consistent with our Supreme Court's opinion in *Levy* v. *Superior Court* (1995) 10 Cal.4th 578, 585 [41 Cal.Rptr.2d 878, 896 P.2d 171]. In *Levy*, our Supreme Court was called upon to decide whether the term "parties" as used in section 664.6 referred to the litigants themselves or could also encompass their counsel. In construing section 664.6 to require the litigants to sign the documents themselves, our Supreme Court explained the term "party" means "the specific person or entity by or against whom legal proceedings are brought." (10 Cal.4th at p. 583.) It follows when used in the plural, as it is in the statute, it contemplates the litigants on both sides of the dispute. Indeed, unless the Legislature intended for section 664.6 to apply only in multiple party litigations, an obvious absurdity which neither party here argues, there is no other reasonable explanation for using the term "parties" in the plural.

Moreover, our interpretation is both consistent with and gives effect to the statute's purpose. As our Supreme Court noted, the purpose of the signed writing requirement in section 664.6 is to facilitate the summary nature of the proceeding by decreasing the likelihood of misunderstandings and "minimiz[ing] the possibility of conflicting interpretations of the settlement." (10 Cal.4th at p. 585.) "A procedure in which a settlement is evidenced by one writing *signed by both sides* minimizes the possibility of . . . dispute[s] and legitimizes the summary nature of the section 664.6 procedure." (*Robertson*

v. *Chen* (1996) 44 Cal.App.4th 1290, 1293 [52 Cal.Rptr.2d 264], italics added.)

Notably, our holding does not interpret section 664.6 to require the signature of *all* of the parties in the action. Certainly we can conceive of a multiple-party litigation where some, though not all of the parties enter into a settlement agreement. The statutory purpose of expediting settlement agreements to judgment would not be furthered if it was unavailable to those litigants on both sides of a multiparty action who chose to enter into a settlement agreement in the manner contemplated by the statute. We simply hold the section's requirement of a "writing signed by the parties" must be read to apply to all parties bringing the section 664.6 motion and against whom the motion is directed. In this case, Harris did not sign the letter. Accordingly, the statutory prerequisites were not satisfied in this case.

Finally, having concluded the statutory prerequisites were not satisfied in this case, we reject Harris's invitation to consider Appel's and Rudin's sworn declarations offered in opposition to the motion to enforce the settlement agreement. Although the statute permits a court to consider extrinsic evidence of intent to settle, a court may only engage in such evidentiary review if the statutory prerequisites have been satisfied. (See, e.g., *Weddington Productions, Inc.* v. *Flick, supra,* 60 Cal.App.4th at p. 810; *City of Fresno* v. *Maroot* (1987) 189 Cal.App.3d 755, 761-62 [234 Cal.Rptr. 353].)

II. *The Court Erred in Sustaining the Demurrer Without Leave to Amend With Respect to the Cause of Action for Breach of Written Contract.*

■ The statutory procedure for enforcing settlement agreements under section 664.6 is not exclusive. Thus, even when the summary procedures of section 664.6 are not available, a party can still seek to enforce a settlement agreement by, among other things, prosecuting an action for breach of contract. (*Levy* v. *Superior Court, supra,* 10 Cal.4th at p. 586, fn. 5; *Robertson* v. *Chen, supra,* 44 Cal.App.4th at p. 1293.) This is precisely what Harris sought to do in this case when he amended his complaint to state a cause of action for breach of written contract against Rudin and Appel and their law firm. The trial court's determination the statutory prerequisites were not satisfied is not dispositive as to whether a contract in fact existed, or more precisely in this case, whether Harris sufficiently stated a cause of action for breach of contract.

■ In evaluating whether the court erred in sustaining the demurrer, we must assume the truth of all facts properly pleaded and decide whether, upon

de novo review of the complaint, plaintiff has pleaded sufficient facts to constitute a cause of action. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Where the trial court sustains a demurrer without leave to amend, we must decide whether the complaint alleges facts showing entitlement to relief under "any possible legal theory." (*Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444 [266 Cal.Rptr. 601].) If so, the court abuses its discretion in denying leave to amend. *(Ibid.)*

■ To state a cause of action for breach of contract, a party must plead the existence of a contract, his or her performance of the contract or excuse for nonperformance, the defendant's breach and resulting damage. (*Otworth* v. *Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 459 [212 Cal.Rptr. 743].) If the action is based on alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference. (*Ibid.*)

■ Respondents assert the complaint fails to state a cause of action for breach of contract because the Letter on its face demonstrates it was merely an agreement to agree in the future. ■ " 'Whether a writing constitutes a final agreement or merely an agreement to make an agreement depends primarily upon the intention of the parties. In the absence of ambiguity this must be determined by a construction of the instrument taken as a whole.' " (*Beck* v. *American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1562 [260 Cal.Rptr. 237]). "The objective intent as evidenced by the words of the instrument, not the parties' subjective intent, governs our interpretation." (*Ibid.*)

Where the writing at issue shows "no more than an intent to further reduce the informal writing to a more formal one" the failure to follow it with a more formal writing does not negate the existence of the prior contract. (*Smissaert* v. *Chiodo* (1958) 163 Cal.App.2d 827, 831 [330 P.2d 98].) However, where the writing shows it was not intended to be binding until a formal written contract is executed, there is no contract. (*Banner Entertainment, Inc.* v. *Superior Court* (1998) 62 Cal.App.4th 348, 358 [72 Cal.Rptr.2d 598].)

■ Respondents rely on our holding in *Beck* v. *American Health Group Internat., Inc., supra,* 211 Cal.App.3d at page 1562 to support their contention the Letter reflects a nonactionable agreement to agree. In *Beck*, we affirmed the trial court's order sustaining a demurrer to a breach of written contract claim, where the writing on its face showed it constituted an agreement to agree. There, the writing at issue stated, " 'It is a pleasure to

draft the outline of our future agreement . . . .' " (*Id.* at p. 1562, italics omitted.) After outlining the terms, it concluded: " 'When we have a draft, we will discuss it and hopefully shall have a completed contract and operating unit in the very near future.' " (*Id.* at p. 1563, italics omitted.) We held the terms of the writing demonstrated a manifest "intention of the parties that no binding contract would come into being until the terms of the letter were embodied in a formal contract to be drafted by corporate counsel." (*Ibid.*)

In this case, respondents point to the portion of the Letter stating "[t]his office will prepare the initial draft of the settlement documents." Respondents argue the "initial draft" contemplates further drafts based upon further discussions. As such, respondents argue, the Letter demonstrates a manifest intention not to enter into a contract until a formal settlement agreement is executed.

In reviewing a demurrer, our function is simply to determine whether the complaint alleges facts sufficient to constitute a cause of action. Here, we conclude it does. The Letter, drafted by respondents' own counsel and signed by respondents Rudin and Appel, purports to embody the "essential terms" of the agreement. It is signed under a signature block noting "[a]ccepted and agreed." It is thus far different from *Beck* where the writing itself was expressly denominated as an outline of a "future agreement." (See *Beck* v. *American Health Group Internat., Inc. supra,* 211 Cal.App.3d at pp. 1562-1563.) In addition, in *Beck,* plaintiff's complaint merely relied on the language of the Letter; it did not, as Harris does here, attempt to plead any facts alleging the plaintiff's interpretation of the Letter. In *Beck* we noted the addition of allegations in the complaint ascribing meaning to otherwise ambiguous language would have saved the complaint from demurrer by "bring[ing] into play the rule that a trial court on demurrer may not interpret a writing on the assumption that the plain meaning of its terms prevails." (*Id.* at p. 1564.)

At a minimum, Harris's complaint alleges facts evidencing an oral agreement. The complaint alleges Harris and respondents engaged in several communications, "both written and telephonic" which "culminated in a settlement agreement." The terms of the purported settlement agreement are set forth in the complaint and are alleged to have been reduced to writing in the Letter attached to the complaint and incorporated therein by reference. Whether the parties intended their communications to be a binding settlement agreement or an agreement to further negotiate after a formal draft was prepared is a factual question not properly the subject of a demurrer. (See *Duran* v. *Duran* (1983) 150 Cal.App.3d 176, 181 [197 Cal.Rptr. 497]

[denying summary judgment where plaintiff sought to enforce oral settlement agreement; the question whether communications to settle resulted in a binding settlement agreement or an agreement to further negotiate after formal documentation was executed raised a factual issue to be decided by the trier of fact], opn. superseded on other grounds by statute, as recognized in *Corkland* v. *Boscoe* (1984) 156 Cal.App.3d 989 [203 Cal.Rptr. 356].) Because the allegations in the complaint were sufficient to state a claim for breach of an oral contract, we hold the trial court erred in sustaining the demurrer without leave to amend.

III. *The Court Properly Sustained the Demurrer With Respect to Both Causes of Action for Intentional Infliction of Emotional Distress.**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed in part and reversed in part. On remand the trial court is directed to vacate the judgment and reinstate the cause of action for breach of written contract, and grant leave to amend to state a cause of action for breach of oral contract, for reasons consistent with the views set forth in this opinion. Each party to bear its own costs on appeal.

Lillie, P. J., and Woods, J., concurred.

---

*See footnote, *ante*, page 299.