[No. B157202. Second Dist., Div. One. Jan. 3, 2003.]

MORAD ELYAOUDAYAN, Cross-complainant and Appellant, v. LEO HOFFMAN, Individually and as Trustee, etc., et al., Cross-defendants and Respondents.

## COUNSEL

Law Offices of August G. Carloni and August G. Carloni for Cross-complainant and Appellant.

Tony Forberg for Cross-defendants and Respondents.

## OPINION

**MALLANO, J.**—Under section 664.6 of the Code of Civil Procedure, a trial court may enforce a settlement agreement made during pending litigation if the parties entered into the agreement either orally before the court or in writing outside the presence of the court.

The question presented in this appeal is whether a party who agrees to a settlement in writing outside the presence of the court may enforce it against a party who agreed to the same settlement orally before the court. We answer that question in the affirmative.

### I

### BACKGROUND

In November 1999, plaintiffs Ben and David Eghballi filed this action against Morad Elyaoudayan, Leo Hoffman, Hanna Hoffman, and Tina Kushner, the Hoffmans' daughter. Elyaoudayan filed a cross-complaint against the Hoffmans and Kushner (collectively the Hoffmans) and both plaintiffs. The dispute concerned Elyaoudayan's attempt to purchase real property from the Hoffmans. Upon filing the cross-complaint, Elyaoudayan recorded a lis pendens against the property.

At some point, the complaint was dismissed, and the case proceeded as to the cross-complaint. On May 15, 2001, the case was called for jury trial. The following day, all counsel were present and informed the trial court that they

had reached a global settlement. All of the parties were present with the exception of the Hoffmans. Leo and Hanna Hoffman were ill, and their daughter, Tina, was taking care of them. The Hoffmans' attorney said he had authority to enter into the settlement on their behalf.

The settlement, as read into the record by counsel, was as follows. Ben Eghballi agreed to pay Elyaoudayan $25,000, with $5,000 payable upon the execution of a written settlement agreement and, thereafter, four equal payments of $5,000 due by the 20th day of each month until the final payment on September 20, 2001. In the event that Ben Eghballi defaulted in making payments, the court would enter judgment against him in the amount of $30,000—$25,000 plus a $5,000 penalty—less any payments previously made. Elyaoudayan agreed to dismiss his cross-complaint against the Hoffmans in exchange for the cancellation of escrow and the return of his $5,000 deposit. The Eghballis were granted possession of the property as tenants, and Elyaoudayan agreed not to purchase the property or interfere with the tenancy as long as either of the Eghballis remained there. Each party released every other party from all claims and interests arising out of the dispute. The settlement was to be enforceable under section 664.6 of the Code of Civil Procedure (section 664.6).[1]

After the settlement was placed on the record, each party who was present stated orally and individually that he agreed with the terms. For example, the reporter's transcript reads in part:

"Mr. Carloni [counsel for Elyaoudayan]: Mr. Elyaoudayan, you have heard the stipulation and each of the terms of the settlement, $25,000 payable to [sic] [Ben] Eghballi and we're going to dismiss all of our complaints against both [Ben] and [David]. This is what you desire?

"[Mr. Elyaoudayan]: Yeah.

"Mr. Forberg [counsel for the Hoffmans]: If I may, against the Hoffmans.

"Mr. Carloni: And also against Mr. Hoffman. You're going to cancel the escrow on the condition we receive back the $5,000 we had deposited into escrow.

"[Mr. Elyaoudayan]: Okay. [¶] . . . [¶]

---

[1]That statute provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. . . ."

"Mr. Carloni: If they don't pay, you will be entitled to enter a stipulation for judgment. You'll get a judgment for the parties. Okay? Say out loud.

"[Mr. Elyaoudayan]: Okay.

"The Court: You understand the terms and agree to them?

"[Mr. Elyaoudayan]: Yes, I agree."

Elsewhere in the transcript are these statements:

"[Counsel for Ben Eghballi]: Each party will agree to sign any and all agreements to—

"[Counsel for Mr. Elyaoudayan]: Including any releases of the encumbrance on any property."

Having obtained the oral consent of each of the parties present, the trial court stated: "The court has heard the settlement, which is on the record. Each party has indicated their understanding of the settlement and their agreement to it. The court approves the settlement, orders the parties to comply with its terms and thanks everyone involved with this case . . . in bringing it to a conclusion."

After the hearing, counsel for David Eghballi drafted a proposed written agreement and sent it to other counsel. It did not conform to the terms of the oral settlement reached in court. As a result, counsel for Elyaoudayan obtained a copy of the reporter's transcript and drafted a "Stipulation and Agreement for Settlement of Pending Legal Action." He sent it to other counsel on June 14, 2001. The agreement was executed in counterparts and was personally signed by the Hoffmans and the Eghballis, leaving only Elyaoudayan, who did not sign it.

On June 25, 2001, counsel for Elyaoudayan wrote to other counsel, stating: "I am deeply concerned by the failure to receive the considerations that were promised at the stipulated settlement entered before the Court on May 16, 2001. [¶] . . . [¶] . . . At the present time, my client is due executed copies of the Agreement, $10,000 from [Ben Eghballi], $5,000 on execution and the $5,000.00 payment due on June 20, 2001. . . . [¶] Gentlemen, I must insist upon immediate compliance and request that the executed documents be in my office by Wednesday, June 27, 2001, with all monetary amounts that are due."

When June 27, 2001, passed without Elyaoudayan having received a payment, it appeared to him that Ben Eghballi would not make any of the

payments. As a result, Elyaoudayan refused to sign the written settlement agreement. Nor would he remove the lis pendens filed in connection with his cross-complaint against the Hoffmans. For their part, the Hoffmans complied with the terms of the settlement by canceling escrow and instructing the escrow holder to return Elyaoudayan's $5,000 deposit.

On July 6, 2001, Elyaoudayan filed a motion to set aside the stipulated settlement and reset the case for trial. He argued in part that the settlement was not enforceable pursuant to section 664.6 because the Hoffmans, unlike the other parties, were not present in court when the oral agreement was put on the record.

David Eghballi filed opposition to the motion, contending that the settlement was enforceable under section 664.6 because all of the parties had agreed to the settlement either orally or in writing. Joinders were filed by Ben Eghballi and the Hoffmans.

In reply papers, Elyaoudayan asserted that section 664.6 was not applicable because the Hoffmans were not present in court at the time of the oral agreement. Thus, not *all* of the parties had entered into the oral agreement. Further, Elyaoudayan had not signed the written agreement. Thus, not *all* of the parties had entered into the written agreement.

By minute order dated July 31, 2001, the trial court denied Elyaoudayan's motion. The order read: "[A]ll parties except the [Hoffmans] were present in court when the Settlement Agreement was stated on the record and all parties entered into the Agreement on the record; counsel for the [Hoffmans] represented that he had authority to speak for his clients; that he had spoken to them and that they were in agreement with the Settlement. [¶] That Agreement has now been signed by them. [¶] Therefore, under Code of Civil Procedure section 664.6, the agreement is ratified by all parties and is valid."

On October 19, 2001, the Hoffmans filed a motion to enforce the settlement under section 664.6 and expunge the lis pendens on their property. Elyaoudayan opposed the motion, pointing out that the Hoffmans were not parties to the oral agreement. He also noted that the oral agreement contemplated a subsequent written agreement, which he had not signed. In addition, Elyaoudayan filed a motion for reconsideration, asking the court to change its prior ruling denying his motion to set the settlement aside.

By minute order dated January 14, 2002, the trial court denied Elyaoudayan's motion for reconsideration and granted the Hoffmans' motion to enforce the settlement and expunge the lis pendens. The trial court stated:

"This Court has held the Settlement Agreement entered into between the parties thereto to be a valid and enforceable agreement resolving this case under CCP § 664.6." With reference to Ben Eghballi, the court explained: "The fact that one of the parties is not living up to his part of the bargain does not abrogate the agreement. In fact, the Settlement Agreement anticipated such a possibility and imposed a penalty for such eventuality within the four walls of the Settlement Agreement. The appropriate remedy is to enter and enforce judgment against the offending party." Elyaoudayan filed a timely appeal from the trial court's order.

## II

### DISCUSSION

■ Because this appeal involves the application of statutory law to undisputed facts, we review the trial court's decision de novo. (*Murphy v. Padilla* (1996) 42 Cal.App.4th 707, 711 [49 Cal.Rptr.2d 722].)

■ " 'The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . .' . . . In determining that intent, we first examine the words of the statute itself. . . . Under the so-called 'plain meaning' rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. . . . If the language of the statute is clear and unambiguous, there is no need for construction. . . . However, the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose. . . . ' "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute . . . ." . . .' " (*Bodell Construction Co. v. Trustees of Cal. State University* (1998) 62 Cal.App.4th 1508, 1515-1516 [73 Cal.Rptr.2d 450].)

■ "Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 [71 Cal.Rptr.2d 265].) The statute recognizes that a settlement may be summarily enforced in either of two situations: where the settlement was made orally before the trial court or where it was made in writing outside the presence of the court. Nothing in the statutory language suggests that, in a multiparty action, *all* parties must agree to the settlement *in the same manner.* And as long as the parties agree to the *same material terms,* be it orally or in writing, the purpose of section 664.6 is satisfied.

That purpose was best explained by our Supreme Court in *Levy v. Superior Court* (1995) 10 Cal.4th 578 [41 Cal.Rptr.2d 878, 896 P.2d 171] (*Levy*). In

that case, the court held that "the term 'parties' as used in section 664.6 . . . means the litigants themselves, and does not include their attorneys of record." (*Id.* at p. 586.) The court stated:

"Unlike the steps an attorney may take on behalf of the client that are incidental to the management of a lawsuit, such as making or opposing motions, seeking continuances, or conducting discovery, the settlement of a lawsuit is not incidental to the management of the lawsuit; it ends the lawsuit. Accordingly, settlement is such a serious step that it requires the client's knowledge and express consent. . . . [¶] . . . [¶]

"[Section 664.6] created a summary, expedited procedure to enforce settlement agreements when certain requirements that decrease the likelihood of misunderstandings are met. Thus the statute requires the 'parties' to stipulate in writing or orally before the court that they have settled the case. The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent. This protects the parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle, and minimizes the possibility of conflicting interpretations of the settlement. . . . It also protects parties from impairment of their substantial rights without their knowledge and consent." (*Levy, supra,* 10 Cal.4th at pp. 583-585, citations and fn. omitted.)

In the present case, Elyaoudayan and the Eghballis agreed to the settlement orally before the trial court. All parties except Elyaoudayan agreed to the settlement by signing the written agreement. Although the written agreement—a seven-page document—included terms that were not part of the oral agreement, the two agreements shared the same material terms. Thus, in agreeing to the settlement, *all* parties demonstrated the same degree of "mature reflection and deliberate assent." (*Levy, supra,* 10 Cal.4th at p. 585.)

Elyaoudayan's arguments to the contrary are inconsistent with common sense and practicality. The Hoffmans were not present in court because two of them were ill and the third was taking care of the other two. That circumstance should not preclude the other parties from reaching an oral settlement in court and allowing the Hoffmans to agree to the settlement in writing outside the court.

Elyaoudayan contends that, because the oral agreement contemplated a subsequent written agreement that he did not sign, the settlement is not enforceable under section 664.6. We disagree. The oral agreement's statement that the parties would later sign a written agreement did not affect the

enforceability of the oral settlement under section 664.6. ■ " ' "Whether [an oral agreement] constitutes a final agreement or merely an agreement to make an agreement depends primarily upon the intention of the parties. In the absence of ambiguity this must be determined by a construction of the [oral agreement] as a whole." ' . . . 'The objective intent as evidenced by the words of the [oral agreement], not the parties' subjective intent, governs our interpretation.' . . .

"[If] the [oral agreement] at issue shows 'no more than an intent to further reduce the [oral agreement] to a more formal [written] one' the failure to follow it with a more formal writing does not negate the existence of the prior [oral] contract. . . . However, where the [oral agreement] shows it was not intended to be binding until a formal written contract is executed, there is no contract." (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307 [87 Cal.Rptr.2d 822] (*Harris*), citations omitted.) "California law is clear that there is no contract until there has been a meeting of the minds on *all* material points." (*Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 357-358 [72 Cal.Rptr.2d 598], italics in original.)

■ Here, "the respective parties orally agreed upon all of the [material] terms and conditions of a proposed written agreement with the mutual intention that the oral agreement should thereupon become binding[.] [T]he mere fact that a formal written agreement to the same effect [was] not . . . signed [by all of the parties] does not alter the binding validity of the oral agreement [on the parties who gave their assent before the trial court]." (*Banner Entertainment, Inc. v. Superior Court, supra*, 62 Cal.App.4th at p. 358.)

A review of the record in this case illustrates the point. The attorneys participated in reading the settlement into the record and in questioning the individual parties to ensure that each party agreed to it. There was nothing tentative about the effect of the terms. The word "agreement" and variations of "stipulate" were frequently used in stating the oral settlement.

At the beginning of the hearing in the trial court, counsel for Ben Eghballi said: "Your Honor, we'd like to have the settlement read onto the record and have the clients give their authorization and then we'll convert them to writing, your Honor. [¶] . . . [¶] . . . The parties have entered into a global settlement wherein this matter *has been settled* in the amount of $25,000 to be paid by my client . . . ." (Italics added.)

Later in the hearing, counsel for David Eghballi stated: "This agreement is an all-inclusive agreement. There are no other agreements whatsoever

amongst any of the parties here . . . . [A]s *of today, all agreements are stated right now*—whatever interest or transaction that may exist." (Italics added.) Counsel for the Hoffmans immediately added: "And the court [is] to exercise jurisdiction under 664.6 to enforce the terms of the settlement agreement in exchange for dismissal of the action."

■  Often, in cases where an oral settlement is placed on the record in the trial court, a written agreement will follow. If difficulties or unresolvable conflicts arise in drafting the written agreement, the oral settlement remains binding and enforceable under section 664.6. Having orally agreed to settlement terms before the court, parties may not escape their obligations by refusing to sign a written agreement that conforms to the oral terms. The oral settlement, like any agreement, "imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (Rest.2d Contracts, § 205, quoted with approval in *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371-372 [6 Cal.Rptr.2d 467, 826 P.2d 710].)

■  Nothing in *Harris, supra,* 74 Cal.App.4th 299, is to the contrary. There, two of several defendants had signed a letter agreeing to settle the case. The plaintiff, who did not sign the letter, sought to enforce the purported settlement under section 664.6, arguing that "the statute's requirement of a 'writing signed by the parties' does not expressly require *all* the parties in the action to sign the settlement." (*Harris,* at p. 304, italics in original.) The court concluded that the letter agreement was not enforceable as a written settlement, stating: "[O]ur holding does not interpret section 664.6 to require the signature of *all* of the parties in the action. Certainly we can conceive of a multiple-party litigation where some, though not all of the parties enter into a settlement agreement. . . . We simply hold the section's requirement of a 'writing signed by the parties' must be read to apply to all parties bringing the section 664.6 motion and against whom the motion is directed. In this case, [plaintiff] did not sign the letter." (*Harris, supra,* 74 Cal.App.4th at p. 306, italics in original.)

In *Harris,* the only arguable settlement agreement was in writing. The plaintiff sought to enforce the alleged settlement as " 'a writing signed by the parties.' " (*Harris, supra,* 74 Cal.App.4th at p. 304, quoting § 664.6.) ■  The Court of Appeal held that if a party seeks to enforce such a settlement under section 664.6, he or she must have signed the agreement. The plain meaning of the statute requires no less. Under section 664.6, a litigant cannot enforce a settlement agreement to which he or she is not a party.

■  *Harris* does not require that all parties agree to a settlement in the same way—that *all* must sign a writing outside the presence of the court or

*all* must orally agree before the court. *Harris* does not preclude a "mix and match" approach to the *manner* of agreement as long as all parties agree to the *same material terms*.

Here, the settlement existed in two forms, oral and written. They both contained the same material terms. All parties agreed to the settlement in one form or the other or both. Accordingly, we affirm the trial court's enforcement of the settlement under section 664.6.[2]

III

DISPOSITION

The order is affirmed.

Spencer, P. J., and Vogel (Miriam A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied March 19, 2003.

---

[2]Section 664.6 is not the exclusive means of enforcing a settlement. Alternative procedures include a motion for summary judgment and a separate suit in equity. (See *Davidson v. Superior Court* (1999) 70 Cal.App.4th 514, 537 [82 Cal.Rptr.2d 739].)