Filed 7/14/23  Curtis v. Curtis CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN CURTIS, as Trustee, etc.,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ROBERT CURTIS,<br><br>  Defendant and Appellant. | B323267 consol. w/B326723<br><br>(Los Angeles County<br>Super. Ct. No. 20STPB07289) |

APPEALS from an order and judgment of the Superior Court of Los Angeles County, Brenda Penny, Judge.  Affirmed.

Robert Edward Curtis, in pro. per., for Defendant and Appellant.

Law Offices of Henry N. Jannol, Henry N. Jannol and Neal B. Jannol, for Plaintiff and Respondent.

————————————————

Robert Curtis appeals from an order and judgment pursuant to Code of Civil Procedure[1] section 664.6 enforcing a settlement agreement between him and his brother John Curtis, as trustee of the Declaration of Trust of Gilbert T. Katz and Roselyn J. Katz (Trust). The settlement agreement resolved litigation between Robert and John,[2] both beneficiaries of the Trust, pertaining to John's duties as trustee and the distribution of Trust assets.

On appeal, Robert argues that the settlement agreement is inconsistent with the terms of the Trust and various provisions of the Probate Code, and that the trial court therefore erred in enforcing it.

We affirm the trial court's order and judgment. Robert has forfeited his contentions on appeal by failing to raise them in the trial court. Furthermore, his contentions are undermined by his voluntary assent to the settlement agreement, and they lack factual support in the record. And even if we reached Robert's arguments, we disagree that the settlement agreement is inconsistent with either the Trust or the Probate Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I. The Trust and related litigation

The Trust was the revocable living trust of Gilbert T. Katz and Roselyn J. Katz. Gilbert and Roselyn were married and had

---

[1] All subsequent undesignated statutory references are to the Code of Civil Procedure.

[2] For the sake of clarity and convenience, and intending no disrespect, we refer to Robert Curtis and John Curtis by their first names.

two children, Robert and John.  Robert and John were beneficiaries of the Trust.

After Roselyn's death, Gilbert became sole trustee of the Trust.  Gilbert thereafter resigned as trustee and appointed John as the sole trustee of the Trust.  When Gilbert died, the Trust became irrevocable and all Trust assets were to be distributed equally between Robert and John.

In September 2020, John filed his "First and Final Account by Trustee and Petition for: 1. Approval of Acts by Trustee; 2. Approval of Account by Trustee; 3. Discharge of Trustee; 4. Approval of Attorneys' Compensation; 5. Approval of Trustee's Compensation; 6. Determination of Nonexistence of Duty to Account or Right to Accounting; and 7. Instructions and Order for Termination of Trust" (Final Account).  Robert then filed objections to the Final Account in January 2021 and supplemental objections in March 2021.[3]

Robert also filed two petitions related to the Trust.  In May 2021, Robert filed a "Petition Under Probate Code Sections 850, 16420 and 17200."  Robert alleged that John, acting as trustee of the Trust, "caused disbursements to be made from certain bank accounts improperly" and that such "transactions amounted to a breach of [John's] duties" as trustee.  The petition sought an order compelling John to pay damages and reducing his compensation as trustee.  Then, in January 2022, Robert filed a "Petition to Compel Trustee to Account, Pursuant to Probate Code § 17200."  Robert asked the court, among other things, to

---

[3]     The parties have included neither the Final Account nor the objections in the appellate record.

3

compel John to provide a full accounting of all Trust financial transactions.

## II.    The Deal Memo

In April 2022, the trial court ordered the parties to attend a mandatory settlement conference.  The day after the settlement conference, Robert and John signed a written settlement agreement titled "Deal Memo to Memorialize Primary Terms of Settlement Reached at Mandatory Settlement Conference" (Deal Memo).

The Deal Memo provided that the remaining Trust assets would be divided equally between Robert and John.  A reserve of $15,000 was established "to be held for purposes of closing the Trust," with the balance to be distributed by April 2023.  The parties agreed that "[n]o trustee compensation shall be paid from the Trust or from the reserve" and that John "waives all trustee fees, other than expense reimbursements."

The Deal Memo also resolved the pending litigation.  It stated that the Final Account "is approved, and all acts of the trustee reported therein are approved."  Moreover, it provided that "[a]ll objections and petitions" filed by Robert "are withdrawn and denied with prejudice," that all pending discovery "is withdrawn," and that "[n]o further discovery shall be propounded."  It appears that some of John's responses to Robert's discovery requests were pending at the time the parties signed the Deal Memo.

Additionally, the parties agreed that "all actions taken by the trustee" after the Final Account "are approved," and that "[a]ny further accounting is waived."  They also agreed that "[a]ll attorneys' fees and accounting fees paid by the trustee from the Trust are approved."

4

Also relevant here, the Deal Memo included a mutual release of claims related to the Trust. It stated that "[t]he parties release each other from all claims relating to the Trust, the assets of Gilbert T. Katz, and Roselyn J. Katz, and the trusteeship of the Trust." It further provided that "[a] long form settlement agreement shall be executed" by Robert and John, "which document shall incorporate all terms of their settlement including general and mutual releases and waivers, Cal. Evid. Code section 1542 waivers, and other relevant terms such that their settlement is complete and total," and that, "in exchange for the payments to be made pursuant to the settlement, all litigation in this matter shall end and all claims relating to the Trust, except for continuing obligations pursuant to the settlement, shall be fully released."

In the event the parties were unable to resolve "any differences over the form and/or content of the proposed long form settlement agreement," they agreed to use a "probate mediator, to be paid for by the Trust and selected mutually." They also agreed that the court would "retain jurisdiction to enforce the settlement pursuant to Code of Civil Procedure [section] 664.6."

## III. Enforcement proceedings

After Robert and John signed the Deal Memo, John's counsel sent Robert a long form settlement agreement for him to sign.

Robert refused to sign it. In an email to John's counsel, Robert explained that he had signed the Deal Memo "in good faith" after having been "pressured and badgered" by John's counsel. But Robert now believed John wanted to keep "the Trust assets to himself, in violation of the terms of the Trust and the Probate Code sections establishing the duties imposed upon a

5

trustee." Robert thus purported to "rescind" his signature from the Deal Memo and informed John's counsel that he expected John to respond to his outstanding discovery requests.

John, in turn, filed a motion to enforce the Deal Memo pursuant to section 664.6.

Robert did not file an opposition to John's motion. Instead, after his opposition was due, Robert filed a request to continue the hearing on John's motion. According to Robert's request, he had planned to file an opposition but was prevented from doing so by several unforeseen circumstances.

At the hearing on John's motion, Robert appeared on his own behalf and renewed his request for a continuance. The trial court denied Robert's request.

The trial court then announced its tentative ruling to grant John's motion to enforce the Deal Memo. The court found that the Deal Memo memorialized the primary terms of the parties' settlement agreement, that the terms of the Deal Memo were sufficiently definite and certain, and that both parties signed the Deal Memo. The court also found no indication of duress or coercion in connection with the Deal Memo, and further noted that Robert did not file any opposition to John's motion.

In response, Robert stated that prior to the mandatory settlement conference he received an email from one of John's attorneys stating that "if I don't go through with this mandatory settlement conference, 'then you're going to have to deal with me. And I'm not as nice as my colleague,' who's standing before you . . . . So I felt there was some threatening tone to that e-mail." Robert further explained that he had granted John an extension of time to respond to Robert's outstanding discovery requests and had not received John's responses.

John's counsel then explained that John's discovery responses were not due until after the mandatory settlement conference, and that John had since objected to Robert's discovery requests. John's counsel also emphasized that the email Robert described "is not unlawful and it does not constitute grounds sufficient to change the outcome here."

The trial court responded, "Yes. I agree with that." It then adopted its tentative ruling as its final order. The court's subsequent minute order, dated August 12, 2022, reiterated the court's findings from the hearing and stated that the court granted John's motion. The minute order also directed John's counsel to prepare an order.

Robert filed a notice of appeal on September 8, 2022, indicating he appealed from the trial court's decision to grant John's motion to enforce the Deal Memo (appeal no. B323267).

On January 10, 2023, the trial court issued its written order granting John's motion to enforce the Deal Memo and entering judgment in accordance with its terms. Nine days later, Robert filed a notice of appeal from the trial court's order and judgment (appeal no. B326723). We consolidated both appeals.

## DISCUSSION

### I. Appealable order

As an initial matter, we note that Robert's first notice of appeal purported to appeal from the trial court's August 12, 2022 unsigned minute order, which directed John's counsel to prepare an order. In these circumstances, the trial court's August 12, 2022 minute order was not an appealable order. (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 101 ["A minute order that directs the preparation of a formal written order is not itself

7

appealable."]; *Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1283 [because trial court directed "counsel to prepare a formal written order, an appeal may not lie from the minute order"]; see also Cal. Rules of Court, rule 8.104(c)(2) ["if the minute order directs that a written order be prepared, the entry date is the date the signed order is filed"].)

Nonetheless, we construe Robert's first notice of appeal as an appeal from the January 10, 2023 order enforcing the Deal Memo and entering judgment in accordance with it.[4] (See Cal. Rules of Court, rule 8.104(d)(2) ["The reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment."].) We thus proceed to address the merits of Robert's appeal.[5]

---

[4] John filed a request for judicial notice in B326723, asking that we take notice of the trial court's January 10, 2023 order and judgment. He contends that granting his request will allow us to retain jurisdiction over Robert's premature appeal in B323267. We assume John meant to file his request for judicial notice in B323267, not B326723. In any event, we deny John's request for judicial notice as moot given our resolution of this issue.

[5] In his second appeal, Robert argues that his first notice of appeal, filed on September 8, 2022, divested the trial court of jurisdiction to enter its January 10, 2023 order and judgment enforcing the Deal Memo. Because we have concluded that the trial court's August 12, 2022 minute order was not an appealable order and that Robert's first notice of appeal was thus premature, we conclude that Robert's first notice of appeal did not divest the trial court of jurisdiction to enter its January 10, 2023 order. (See *Hearn Pacific Corp. v. Second Generation Roofing, Inc.*

8

## II. Applicable law and standard of review

Section 664.6, subdivision (a), provides as follows: "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

"Section 664.6 permits the trial court judge to enter judgment on a settlement agreement without the need for a new lawsuit. [Citation.] It is for the trial court to determine in the first instance whether the parties have entered into an enforceable settlement. [Citation.] In making that determination, 'the trial court acts as the trier of fact, determining whether the parties entered into a valid and binding settlement. [Citation.] Trial judges may consider oral testimony or may determine the motion upon declarations alone.' " (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.) "[A] trial court cannot enforce a settlement under section 664.6 unless the trial court finds the parties expressly consented . . . to the material terms of the settlement." (*Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 732.)

"The trial court's factual findings on a motion to enforce a settlement pursuant to section 664.6 'are subject to limited appellate review and will not be disturbed if supported by substantial evidence.' " (*Osumi v. Sutton*, *supra*, 151 Cal.App.4th

(2016) 247 Cal.App.4th 117, 146–147 [invalid appeal has no impact on trial court's jurisdiction to proceed].)

9

at p. 1360.) "Consistent with the venerable substantial evidence standard of review, and with our policy favoring settlements, we resolve all evidentiary conflicts and draw all reasonable inferences to support the trial court's finding that the[ ] parties entered into an enforceable settlement agreement and its order enforcing that agreement." (*Ibid*.) To the extent our review involves "the application of statutory law to undisputed facts, we review the trial court's decision de novo." (*Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1428.)

## III. Analysis

### A. The trial court did not err by enforcing the Deal Memo

Robert does not directly dispute the trial court's determinations that the Deal Memo memorialized the primary terms of the parties' settlement agreement, that its terms were sufficiently definite and certain, or that both he and John signed it.[6] Nor does he dispute the trial court's finding that his assent to the Deal Memo was not procured by duress or coercion. Instead, Robert's primary contention on appeal, described further below, is that the trial court erred by enforcing the Deal Memo because its provisions conflict with the Probate Code and the Trust. We reject Robert's argument for several reasons.

First, Robert failed to raise this argument before the trial court, and thus forfeited it. It is a basic principle of appellate procedure that "[a] party forfeits the right to claim error as

---

[6] Robert's opening brief repeatedly claims that the Deal Memo "proposes" various settlement terms. Because both parties signed it, the Deal Memo is not a proposal; it is an agreement.

10

grounds for reversal on appeal when he or she fails to raise the objection in the trial court." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221.) " 'Any other rule would permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware. [Citation.]' " (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1158–1159.) Not only did Robert fail to file any opposition to John's motion to enforce the Deal Memo in the trial court, but he did not argue at the hearing on John's motion that the Deal Memo conflicted with the Probate Code or the Trust. Robert's forfeiture of this argument is dispositive of the present appeal.

Second, although Robert now raises various contentions about the unfairness of the Deal Memo, he signed it, thereby manifesting his assent to its terms. By signing the Deal Memo, which clearly indicated it was a full and final resolution of the parties' litigation over the Trust, Robert should have understood he was bound by it. Hence, just as "parties may not escape their obligations by refusing to sign a written agreement that conforms to the oral terms" of a settlement enforceable under section 664.6 (*Elyaoudayan v. Hoffman, supra,* 104 Cal.App.4th at p. 1431), Robert could not avoid the effect of section 664.6 by refusing to sign the long form settlement agreement simply because he no longer considered the Deal Memo a fair resolution of the pending litigation (see *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911–912 [affirming entry of judgment pursuant to § 664.6 where "wife's refusal to execute the written settlement was not based on a belief that the written agreement did not reflect accurately the

11

terms of the settlement," "but instead rested upon her belated misgivings about having entered into the" settlement]).[7]

Next, Robert's arguments fail because they rest primarily on his unsupported allegations that John committed wrongdoing in connection with the Trust. For example, without any citation to the record, Robert claims John ignored Robert's requests to account for Trust assets; pressured Robert to settle their dispute over the Trust on John's terms or face prolonged and expensive

---

[7] In his reply brief, Robert appears to argue that he did not agree to a settlement because he refused to sign the long form settlement agreement. He contends that "[a] strong manifestation of Robert's assent to the Deal Memo would have been his execution of the long form settlement agreement, which would have included specific terms of the Deal Memo." He further contends that "[a] party ready to enter a settlement agreement would not have reversed his decision after 'one night to sleep on the terms of the Deal Memo.' "

These arguments overlook that Robert signed the Deal Memo, which the trial court determined was a binding settlement pursuant to section 664.6. Thus, as noted, Robert could not avoid his obligations under the settlement simply because he changed its mind about its fairness. (See *In re Marriage of Assemi, supra,* 7 Cal.4th at pp. 911–912; *Elyaoudayan v. Hoffman, supra,* 104 Cal.App.4th at p. 1431.) Also, invoking Civil Code section 1689, Robert appears to argue in his reply brief that he can rescind the Deal Memo based on a unilateral mistake as to its contents. We do not address this argument, raised for the first time in Robert's reply brief. (See *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [" 'Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' "].)

litigation; withheld information from Robert about municipal bonds held by the Trust; transferred Trust funds to a joint account and used those funds to pay for personal expenses; sold items from the Trust estate and deposited the earnings into a personal account; removed items from Gilbert's home and never accounted for them; transferred Trust funds to a personal account without authorization; and reneged on a promise to reimburse the Trust for his personal use of Trust assets.  Based on these and similar unsubstantiated allegations, Robert contends that John breached his fiduciary duties as trustee, including his duty to account for all Trust assets.  (See Prob. Code, §§ 16000–16015 [trustee's duties in general], 16040 [trustee's standard of care], 16060–16069 [trustee's duty to report information and account to beneficiaries]; 16080–16082 [trustee's duties regarding discretionary powers].)

Relying on these same allegations, Robert contends that the Deal Memo is unenforceable because it absolves John of violations of the Probate Code, and because, contrary to the terms of the Trust, it sanctions an unequal distribution of Trust assets. Robert objects, for example, to the provisions of the Deal Memo approving "[a]ll attorneys' fees and accounting fees paid by the trustee from the Trust"; approving the Final Account "and all acts of the trustee reported therein"; approving "[a]ll actions taken by the trustee from and after" the Final Account and waiving "[a]ny further accounting"; withdrawing and denying "[a]ll objections and petitions filed" by Robert; and releasing "each other" and "all agents, accountants, attorneys, and affiliates of the parties" from "all claims relating to the Trust," the assets of Gilbert and Roselyn, and the "trusteeship of the Trust."  Robert argues that the Deal Memo will shield John's

13

purported misconduct as trustee, preclude Robert from obtaining a full accounting of Trust assets, and thwart the equal distribution of Trust assets.  He further argues that the disputed provisions are "illegal" and "cannot be severed or reformed."

The problem with Robert's arguments—in addition to his failure to raise them in the trial court, and that he signed the Deal Memo agreeing to the disputed provisions—is that he fails to cite to the record to support his claims of John's alleged misconduct.[8]  Robert thus fails to comply with yet another fundamental rule of appellate procedure:  His brief fails to "[p]rovide a summary of the significant facts *limited to matters in the record*" (Cal. Rules of Court, rule 8.204(a)(2)(C), italics added), and "[s]upport any reference to a matter in the record *by a citation to the volume and page number of the record where the matter appears*" (*id.*, rule 8.204(a)(1)(C), italics added).  Nor is Robert exempt from the rules of appellate procedure because he is representing himself on appeal.  (See *Nwosa v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)  Robert has therefore forfeited these arguments to the extent they rely on his unsupported

---

[8]  John argues that the appellate record Robert provided in B323267 was inadequate in several respects.  It omitted John's motion to enforce the Deal Memo, the August 12, 2022 minute order granting John's motion, and the reporter's transcript from the August 12, 2022 hearing.  Citing these and other deficiencies in the appellate record, John contends that Robert cannot "claim that the evidence was insufficient to justify" the trial court's decision to enforce the Deal Memo.  Because we do not construe Robert's appeal as one focused on the insufficiency of the evidence to support the trial court's decision, we need not address John's contention.

factual assertions.[9]  (See *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590 ["[b]y failing to support the factual assertions in their legal arguments with citations to the evidence, plaintiffs have forfeited their argument"]; *Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 846 ["stating what purport to be facts—and not unimportant facts—without support in the record" violates rules of appellate procedure "with the consequence that such assertions will, at a minimum, be disregarded"]; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [if no citation to the record " 'is furnished on a particular point, the court may treat it as waived.' "].)

Finally, even setting aside our conclusion that Robert's arguments rest on unsupported allegations of John's wrongdoing as trustee, as John points out, Probate Code section 16464, subdivision (a), states that "[e]xcept as provided in subdivision (b), a beneficiary may be precluded from holding the trustee liable for a breach of trust by the beneficiary's release or contract effective to discharge the trustee's liability to the beneficiary for that breach."  Thus, that the Deal Memo releases John from

---

[9]     Robert does, however, provide record support for his contention that John objected to some of Robert's discovery requests about the disposition of Trust assets.  Robert argues that without adequate responses to his discovery requests, he cannot ensure there will be an equal distribution of Trust assets in accordance with the Trust and the Deal Memo.  Though not an unreasonable concern, Robert's argument ignores his express agreement, memorialized in the Deal Memo, that "[a]ll pending discovery is withdrawn" and that "[n]o further discovery shall be propounded."

liability for any breaches of his duties as trustee is not, by itself, a reason to conclude the Deal Memo is unenforceable. If anything, the release is consistent with a key purpose of the Deal Memo—to fully resolve the parties' disputes and related litigation over the Trust.[10] And while subsection (b) of Probate Code section 16464 provides that a release of a trustee's liability to a beneficiary "is not effective" in certain circumstances, Robert's reply brief does not address Probate Code section 16464 at all, let alone argue that any of the provisions of subdivision (b) apply here.[11] We therefore need not address the applicability of

---

[10] Robert notes that Probate Code section 16060 provides that "[t]he trustee has a duty to keep the beneficiaries of the trust reasonably informed of the trust and its administration." Citing *Salter v. Lerner* (2009) 176 Cal.App.4th 1184 (*Salter*), Robert argues this provision of the Probate Code is not waivable. But we need not resolve whether the Deal Memo waives John's duty under Probate Code section 16060 because *Salter* is inapposite. That case concerned "a relatively narrow issue" about whether contingent remainder beneficiaries of a trust would violate the trust's no contest provision by filing a petition seeking information related to the trustee's conduct. (*Salter*, at p. 1186.) *Salter* had no occasion to consider whether a beneficiary and trustee could voluntarily agree to waive application of Probate Code section 16060.

[11] Subdivision (b) provides that a "release or contract is not effective to discharge the trustee's liability for a breach of trust" in any of the following circumstances: "(1) Where the beneficiary was under an incapacity at the time of making the release or contract. (2) Where the beneficiary did not know of his or her rights and of the material facts (A) that the trustee knew or reasonably should have known and (B) that the trustee did not reasonably believe that the beneficiary knew. (3) Where the

16

subdivision (b).  (See *Cox v. Griffin* (2019) 34 Cal.App.5th 440, 447 ["An appellate court is not required to make arguments for parties."].)

In sum, we find that the trial court did not err in enforcing the Deal Memo pursuant to section 664.6.

---

release or contract of the beneficiary was induced by improper conduct of the trustee. (4) Where the transaction involved a bargain with the trustee that was not fair and reasonable." (Prob. Code, § 16464, subd. (b).)

## DISPOSITION

The order and judgment are affirmed.  John is entitled to his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.