[Civ. No. 20114. First Dist., Div. One. Apr. 15, 1963.]

CARL F. ALAIMO, Plaintiff and Appellant, v. FRANK H. TSUNODA et al., Defendants and Respondents.

John C. Alaimo and George De Lew for Plaintiff and Appellant.

Marlais & Hover and Sidney Peixotto for Defendants and Respondents.

BRAY, P. J.—Plaintiff appeals from judgment in favor of defendants after order sustaining general and special demurrer without leave to amend.

## QUESTION PRESENTED

Is a real estate "listing" agreement which provides that the sale price of the real property is to be determined by seller valid?

## RECORD

Plaintiff sued for damages for breach of contract. The complaint alleged that plaintiff is a real estate broker, and defendants the owner of the land described in an agreement attached to and incorporated in the complaint, which agreement the parties entered into; that plaintiff performed his part of the agreement; that he sought and obtained an offer to purchase 13 acres of the property for $240,000; that defendants rejected the offer, refused to sell the land for any price and notified plaintiff that they were removing the land from the market, and to make no further attempts to sell the land. Plaintiff claimed to be damaged by the alleged breach of contract in the sum of $27,000. In a second cause of action, plaintiff alleged that defendants had wilfully and maliciously deprived plaintiff of his right to sell the property and sought punitive damages in the sum of $100,000.

Defendants demurred to the complaint on the ground that it did not state a cause of action, in that defendants, by the agreement, were not obligated to sell the property; that the agreement is void because of the uncertainty of a material element, namely, the selling price of the property; and on the further ground that the complaint is uncertain as to the damage alleged. The demurrer was sustained without leave to amend. Judgment in favor of defendants followed.

## AGREEMENT INVALID

The pertinent terms of the agreement are: "For and in consideration of your listing my property [earlier described], and your efforts to find a purchaser, I hereby appoint you my agent, and hereby grant you the sole and exclusive right to sell my property described hereon for the period beginning, February 18, 1957 and ending August 18, 1957, *for the sum of monies to be determined and terms set forth thereon, or upon any other price, terms or exchange to which I may consent.* I agree to pay you five (5%) of the selling price for your services, if sold or exchanged by you

or anyone else including myself, while this contract is in force. If within 15 days after the termination of this listing, said broker notifies me personally or by mail in writing, that during the life, he negotiated with persons named by him and sale is made within ninety days after termination of this contract to any person so named, I agree to pay said broker the commission herein provided. *Price of land to be determined by seller within ninety days*; due to the fact that a study is to be made by said agent to determine how best subdivide mentioned land. Said agent to study said situation, also to determine route of streets now proposed by city of Mt. View, also to obtain engineers tenative [*sic*] map of subdision [*sic*] at his own expense. He is to handle all expediting of maps and recording subdivision with proper authorities and to complete said job. Within ninety days agent to have tenative [*sic*] maps and planned program approved by said owners; then to proceed upon said approved plan. *For the above duties above [sic] agent is to be paid $250 per month in advance for a period of four months; or a total of not to exceed $1000.* The $1000. will be deducted from first commission of any land sold after plan has been approved.'' (Italics added.)

This agreement is quite analogous to that in *Roberts* v. *Adams* (1958) 164 Cal.App.2d 312 [330 P.2d 900], which the court held to be so uncertain as to be void, and not enforceable in specific performance or as a basis for damages. The agreement there granted an option to purchase certain real property ''for the total sum of $85,000.00, *payable as mutually agreed by both parties.*'' The optioner refused to perform the option. The optionee filed an action in specific performance, damages, declaratory and other relief. In a well reasoned and exhaustive opinion by Mr. Justice Ashburn, the action of the trial court in denying the optionee any relief was affirmed. The opinion pointed out that the agreement providing that the terms of payment were to be mutually agreed by the parties constituted an agreement to make an agreement and stated: ''It is Hornbook law that an agreement to make an agreement is nugatory, and that this is true of material terms of any contract.'' (P. 314.) ''It is firmly established as the law of California that *failure to specify or furnish a standard for determination of terms of payment* and method of securing the unpaid balance of the purchase price of real or other property is fatal to its enforceability notwithstanding any desire of the courts to be liberal and

helpful.'' [P. 315] (Italics added.) The court referred to a number of cases supporting the principle enunciated, among others, *Ablett* v. *Clausen* (1954) 43 Cal.2d·280 [272 P.2d 753], which dealt with an option for a renewal of a lease ''upon terms to be then agreed upon''; *Klein* v. *Markarian* (1917) 175 Cal. 37 [165 P. 3], an option to buy land for $45,000, $11,000 to be paid in 10 days and the balance ''in quarterly yearly payments with interest at 6% annually''; *Bonk* v. *Boyajian* (1954) 128 Cal.App.2d 153 [274 P.2d 948], option to purchase property, ''monthly payments on the balance due to be agreed upon at the time of purchase''; *Burgess* v. *Rodom* (1953) 121 Cal.App.2d 71 [262 P.2d 335], contract to purchase realty; certain fixed payments to be made and as to the balance ''Terms to be made as soon as new purchaser arranges for new mortgage now held by . . . Bank to Burgess (the seller)''; *Kline* v. *Rogerson* (1947) 80 Cal.App.2d 158 [181 P.2d 385], contract to purchase realty; payment of the balance of the purchase price ''at $5,000 or more per year, plus interest at 5% or terms *to mutual satisfaction*''; *Avalon Products, Inc.* v. *Lentini* (1950) 98 Cal.App.2d 177 [219 P.2d 485], contract for purchase of equipment, ''Method of payment to be agreed upon before delivery.'' In each of these cases the court held the particular agreement to be invalid, and in *Bonk* and *Ablett* that specific performance of the contract would not lie, and in *Burgess, Kline* and *Avalon* that an action for breach of contract would not lie. In *Roberts* (p. 316) the court quoted from *Bonk*: '' 'Uncertainty, as to the terms and conditions of deferred payments is fatal to a claim for specific performance.' [Citations.] Where, in a business transaction, an important item is reserved for future determination no enforceable obligation is thereby created for 'neither law nor equity provides a remedy for a breach of an agreement to agree in the future.' [Citations.] In the *Ablett* case, the court points out that 'an option agreement which leaves an essential term to future agreement is not enforceable.' The court may not imply or speculate upon what the parties will agree. [Citations.] A statement of the rule and the reason therefor is to be found in 1 Williston, Contracts (1936), section 45, page 131, where the author says: '. . . if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree on anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.' '' *Roberts*

also quoted from *Burgess* (pp. 316-317): "An action for damages for breach of contract for the purchase or sale of real property will not lie unless the writing contains the essential terms and material elements of such an agreement without recourse to parol evidence of the intention of the contracting parties. [Citations.] The law does not provide a remedy for breach of an agreement to agree in the future, and the court may not speculate upon what the parties will agree."

█ Plaintiff contends that in the cases above cited, the terms or price was to be determined by the parties mutually, while in our case the price was to be fixed by the seller, and that therefore, those cases are not in point. While there is that difference, it is a difference without a distinction. The matter of price is just as uncertain here as there. The price was left open for future settlement. Although the price was to be fixed by the seller, it necessarily must be a price to which the plaintiff would agree in order to make his undertaking to sell the property binding on him. Thus, all the parties did here with relation to the sale of the property was to agree to agree upon sale price in the future, and as before stated an agreement to agree in the future is invalid.

In the case at bench the uncertainty as to the purchase price is at least as great as were the terms in the cited cases. Here the price was "to be determined by seller" and the "monies [sale price] to be determined and terms set forth thereon, or upon any other price, terms or exchange to which I may consent." How could any language be more uncertain? By what standard could the court determine a purchase price? The mere fact that plaintiff had an offer of $240,000 for 13 acres of the property could not possibly constitute a price "determined by seller" nor one to which "I may consent."

█ Plaintiff cites cases such as *McIllmoil* v. *Frawley Motor Co.* (1923) 190 Cal. 546, 549 [213 P. 971], to the effect: "The law does not favor but leans against the destruction of contracts because of uncertainty; and it will, *if feasible,* so construe agreements as to carry into effect the reasonable intentions of the parties *if that can be ascertained.*" (Italics added.) Those cases have no application here for the reason that the purchase price of the lands here cannot be ascertained. In *Roberts, supra,* the court quoted the *McIllmoil* statement which it found in *California Lettuce Growers, Inc.* v. *Union Sugar Co.* (1955) 45 Cal.2d 474, 481 [289 P.2d 785, 49 A.L.R.2d 496], and then said (p. 315):

". . . in the absence of internal or external indicia of what the parties would have agreed upon, the court cannot supply the omitted provision, for that would amount to making a contract for the parties."

Plaintiff relies upon *Bewick* v. *Mecham* (1945) 26 Cal.2d 92 [156 P.2d 757], and *Chaney* v. *Schneider* (1949) 92 Cal.App. 2d 88 [206 P.2d 669]. *Bewick* dealt with a lease with option to purchase, the purchase price to be agreed upon between the parties and if not agreed upon to be fixed by arbitrators, each party to select one arbitrator, and the arbitrators so selected to appoint a third. The defendant unjustifiably refused to appoint his arbitrator. In an action for specific performance of the contract, the trial court fixed a purchase price and ordered the contract enforced. In upholding the trial court the Supreme Court referred to section 1613, Civil Code, which prescribed, "*Where a contract provides an exclusive method by which its consideration is to be ascertained,* which method appears possible on its face, but in fact is, or becomes, impossible of execution, such provision only is void . . ." (italics added) and stated that the impossibility of ascertaining the price by the contractual method does not conclude a court from ascertaining the consideration in place of the arbitrators. The difference between *Bewick* and the instant case is that there the contract initially provided a method of determining the price if the parties did not agree, namely, by arbitration, while in the instant case the price was to be fixed by the judgment, or even the caprice of the seller, and if not so fixed no contractual method is provided. *Bewick* (p. 100) quotes *Milnes* v. *Gery,* 14 Ves. Jr. 400, to the effect that the rule permitting the court to fix the price is a limited one ". . . and is mainly applied only to contracts for reference in which, by the form and language of the stipulation, the mode of determining the price by values, or arbitration, is made an essential provision—in fact condition—to the validity of the agreement . . ."

*Chaney, supra,* dealt with a lease of real property, with an option to renew "at rentals and terms to be mutually agreed upon" at the end of the first term. At the designated time, the lessor refused to negotiate terms. In upholding the judgment of the trial court ordering a renewal of the lease and fixing the rental therefor, the court quoted from 1 Williston on Contracts (rev. ed. 1936) section 45, page 131, to the effect that some courts, ". . . recognizing the practical business utility of such clauses in a lease, treat them as sufficiently definite by interpreting them as meaning a reasonable rental under

the circumstances in case the parties cannot agree. . . ." (P. 91.) The court then went on to point out that whether a court would so interpret the lease would depend upon whether the court found that the right of renewal constituted or did not constitute a substantial element in causing the lessee to enter into the lease. The court, referring to the decision in *Streicher* v. *Heimburge* (1928) 205 Cal. 675 [272 P. 290], said (p. 91): "It was held that when arbitrators failed to agree the court would fix a reasonable rental. This decision is based upon the theory that an agreement for the renewal of a lease may or may not be a condition precedent, depending upon the intent of the parties; and that this intent is to be determined from a view of the instrument as a whole, and a consideration of all of the facts in the case." This theory could not apply to a listing agreement which is so illusory in connection with the price of the property to leave its determination to the seller without any standard of price fixing other than the seller's determination of what price he may desire.

Plaintiff contends that the court may determine that the purchase price intended by the agreement is the market value of the land, and that that can easily be ascertained. But the agreement nowhere expresses the market value as the criterion by which the sale price is to be determined. The seller had the right to determine at which price he would sell. Many owners of real property demand more for their property than its market value and will not sell for that value.

Plaintiff concedes that under the agreement defendants could have fixed an exorbitant price, one which no buyer would pay, and that in such event plaintiff could not complain. This illustrates the illusoriness of the contract.

Section 1611, Civil Code, which provides, "When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be so much money as the object of the contract is reasonably worth," is not applicable here. In *Hiller* v. *King* (1951) 105 Cal.App.2d 181 [232 P.2d 905], the agreement between the parties provided that if the appellants desired to sell the land, the parties would agree upon a release price to be then "mutually agreed upon by the parties." (P. 190.) This court stated (p. 190): "It would appear that the clause contains nothing more than an agreement to try to agree upon a release plan sometime in the

future if the Hillers decide to subdivide. There is grave doubt as to whether such an agreement is enforceable.'' (See *Autry* v. *Republic Productions, Inc.* (1947) 30 Cal.2d 144 [180 P.2d 888].)

The agreement provides that plaintiff is to render certain services, such as a study of the land for subdivision purposes, determine street routes, supply an engineer's tentative map, etc. For this he was to receive $250 per month for a period of four months, not to exceed $1,000. This portion of the agreement is definite and certain and is divisible from the rest of the agreement. It is conceded that plaintiff received payment for these services. Hence we are not concerned with that portion of the agreement.

It is obvious that because of the infirmity the trial court correctly sustained the demurrer to the complaint without leave to amend. The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.