Filed 2/5/25  Itkin v. Greenfield CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| GARRY ITKIN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JON GREENFIELD et al.,<br>Defendants and Respondents. | B332503<br><br>(Los Angeles County<br>Super. Ct. No. 22STCV20177) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Keosian, Judge.  Affirmed.

Law Office of Aleksandr Gruzman and Aleksandr Gruzman for Plaintiff and Appellant.

Schorr Law, Zachary D. Schorr, Carina Woo, and Jayant Tripathy for Defendants and Respondents.

————————————

Plaintiff and appellant Garry Itkin appeals the trial court's order sustaining the demurrer to his first amended complaint without leave to amend. Itkin filed suit against defendants and respondents 21326 Ventura, LLC (Ventura) and its managing member, Jon Greenfield (together, respondents), alleging causes of action for breach of contract, specific performance, and declaratory relief. He alleged that he sent an e-mail to Greenfield offering to purchase a property in which Ventura had a majority interest and Greenfield's response, which agreed to the offer pending an attorney's review and proposed two additional terms, constituted acceptance of that offer. Itkin conceded that Greenfield did not sign a later-dated letter of intent (LOI) concerning the sale of the property. We find no error and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In June 2022, Itkin filed his original complaint against Greenfield, Robert Greenfield, Ventura, and Summitridge Realty, LLC (Summitridge) for breach of written contract, specific performance, and declaratory and injunctive relief.[1] Itkin alleged that Greenfield was Ventura's managing member and that Ventura owned 77.5 percent of the subject property, a commercial property located in Los Angeles. Robert, Greenfield's brother, was the managing member of Summitridge, which owned 22.5 percent of the subject property.

The complaint alleged that the parties had a binding contract as of February 8, 2022, based on the terms reflected in a subsequent LOI. The complaint alleged the parties entered into

---

[1] Because Greenfield and Robert Greenfield share the same last name, we refer to Robert Greenfield as Robert. Robert and Summitridge are not parties to this appeal.

the LOI on March 21, 2022, when Itkin signed the document. Robert signed the LOI on behalf of Summitridge on April 30, 2022. Although Greenfield "ha[d] not physically signed the LOI," the complaint alleged that he "approved it and . . . bound himself and Ventura LLC to its terms . . . ."

The essential terms of the LOI were: 1) Itkin would purchase the subject property for $5.3 million, with 77.5 percent payable to Ventura and 22.5 percent payable to Summitridge; 2) Itkin would place a non-refundable deposit of $250,000 into a mutually acceptable escrow account within three business days of opening, with the cost of escrow to be split evenly between Itkin and the defendants; 3) defendants would assign Itkin all of their rights, title, and interest in all leases currently in place with respect to the subject property; 4) the transaction required Itkin's approval of a title report and appraisal but was not contingent upon him obtaining financing; 5) Itkin would continue to occupy the property while it was in escrow pursuant to the terms of a sublease dated November 25, 2019, and would continue to pay rent under the terms of a sublease dated January 23, 2012, until close of escrow; 6) no agent or broker commissions would be generated; 7) a purchase agreement would be prepared containing the foregoing terms and conditions and "all other usual representations, agreements, indemnifications, warranties, and other provisions commonly found in such agreements"; and 8) the parties were to act in good faith to make their best efforts to negotiate and execute a purchase agreement based on the LOI.

According to the complaint, on February 8, 2022, Greenfield sent an e-mail to Itkin stating: " 'I agree with the offer pending our attorney's review of the offer with the following—any side deals with any participant be disclosed—buyer pays for

appraisal—Jon Greenfield.' " The complaint alleged that "the offer" referred to the later-dated LOI. Itkin replied: " 'Dear Jon: I agree. Please instruct your attorney. I am ready to move forward.' " Greenfield replied: " 'It appears that you and Robert are working together. Please have your attorney draft the purchase documents and I will have an attorney for the trust review them.' "

Although the causes of action in the complaint were alleged against all defendants, the complaint asserted Robert, acting on Summitridge's behalf, was "ready, willing and able to consummate the transaction and to sell the Property to Plaintiff on the terms set forth in the LOI," but Ventura breached its obligations by refusing to open escrow on the terms set forth in the LOI. It further alleged that Itkin "performed all of his obligations and covenants under the LOI except for those obligations and covenants for which performance was excused."

Respondents demurred to the complaint in October 2022. They argued the breach of contract cause of action failed because: 1) neither Greenfield nor Ventura signed the alleged contract for sale of land; 2) there was no enforceable contract for the sale of land as Greenfield's e-mail stated that acceptance was "pending our attorney[']s review"; 3) the complaint alleged a binding written contract as of February 8, 2022, but failed to attach the contract or plead its legal effect, and instead relied on an unsigned LOI dated March 21, 2022; 4) the alleged breach by respondents was not an identified obligation of the LOI; and 5) Itkin's allegations of performance or excuse were insufficient. They further contended Itkin's other causes of action failed because his breach of contract cause of action was deficient, and

that all causes of action against Greenfield failed because he was not the owner of the property and could not convey it.

The trial court sustained the demurrer with leave to amend. The court agreed that the statute of frauds barred the alleged agreement because the e-mails sent in February 2022 did not indicate acceptance of the LOI dated March 2022, and also did not establish acceptance of any contractual term because any acceptance was conditional or qualified. The court further concluded the complaint did not properly allege any claims against Greenfield individually. Agents authorized to act on behalf of a corporation are generally not parties to the contract in their personal capacity and Itkin identified no relevant exception. The court also sustained the demurrer on the derivative causes of action. The court granted Itkin leave to amend within 30 days.

In March 2023, Itkin filed a first amended complaint (FAC) asserting the same causes of action. The FAC added the allegation that Greenfield "warranted that he was authorized to act on behalf of [Ventura], as its managing member, and to bind it to the terms of the Contract," and would be liable to Itkin if, "notwithstanding that representation, [Greenfield] refuses to cause [Ventura] to honor its obligations under the terms of the Contract." The FAC additionally alleged that on February 7, 2022, Itkin, acting on behalf of himself and his son, sent an e-mail to Greenfield and Robert offering to purchase the subject property. The e-mail set forth the following terms: 1) a purchase price of $5.1 million, plus $250,000 to compensate the sellers for shortcomings in rental payments under the lease agreement dated January 23, 2012; 2) sellers would assign to buyer all rights under the January 2012 lease agreement "to try and recoup advances buyer previously made to Auto Gallery"; 3) close

5

of escrow would occur within 90 days of acceptance of the offer with costs to be evenly divided between buyer and sellers; 4) buyer would deposit a non-refundable deposit of $250,000 into an escrow account within three working days of the escrow account being opened; 5) the offer would be contingent upon a satisfactory title report and appraisal; 6) no agents or brokers would be involved; 7) buyer would continue occupying the property while in escrow pursuant to a sublease dated November 25, 2019, and would pay monthly rent to sellers under the terms of the January 2012 lease agreement; and 8) the transaction was to be written up in a mutually acceptable purchase and sale agreement with all reasonable and customary terms. Itkin asked Greenfield and Robert to "let [him] know if [they were] happy with above terms," and stated that he had financing in place and was ready to proceed.

The FAC, like the original complaint, alleged that Greenfield responded via e-mail that he agreed, pending his attorney's review. He also proposed the two additional terms described above. The FAC further alleged the parties entered into the LOI on March 21, 2022, and that the terms of the LOI were "essentially the same terms agreed to by [Greenfield] and Ventura" in his prior e-mail. The LOI attached to the FAC was not signed on behalf of Ventura. The FAC further alleged that Greenfield sent a second e-mail on February 8, 2022, in which he asked Itkin to have his attorney prepare purchase documents, which respondents' attorney would review. The FAC omitted the allegation included in the original complaint concerning an intervening e-mail from Itkin.

Respondents demurred to the FAC, arguing that it failed to establish the existence of a contract signed by Ventura for the

6

purchase of the subject property.  They further asserted the court had already concluded that the e-mail from Greenfield did not establish acceptance of any contractual term and the FAC failed to remedy that shortcoming.  Moreover, Itkin had again failed to allege facts demonstrating that he performed his obligations under the contract.  Respondents pointed out that Itkin had not amended the derivative causes of action.  Finally, they argued that all causes of action against Greenfield still failed because the FAC did not identify any basis for him to be held liable in his individual capacity.

The trial court sustained the demurrer to the FAC without leave to amend and entered judgment in favor of Greenfield and Ventura.

Itkin timely appealed.

## DISCUSSION

### I.    Standard of Review

We independently review a trial court's order sustaining a demurrer to determine whether the operative complaint alleges sufficient facts to state a cause of action under any legal theory. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.)  We accept as true all material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law.  (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)  On appeal, we review a trial court's ruling, not its rationale.  (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.)

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect

7

can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.'  [Citation.]  Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609; accord, *State Dept. of State Hospitals v. Superior Court* (2022) 84 Cal.App.5th 1069, 1076.)  A trial court does not abuse its discretion by denying leave to amend if the proposed amendment is not "apparent or consistent" with the plaintiff's original theory of the case.  (*Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 731.)

## II. The FAC Failed to Allege Facts to Support the Causes of Action Alleged Against Greenfield in His Individual Capacity

The FAC alleges that Greenfield is a managing member of Ventura and Ventura, not Greenfield, owns an interest in the subject property.  Respondents contend that Greenfield is not a proper party to the action because he could not enter into a contract for sale of the subject property in his individual capacity and was not a party to the contract merely because he had authority to act as an agent on behalf of Ventura.  We agree that the allegations of the FAC are insufficient to subject Greenfield to personal liability.

The Corporations Code provides that, in a manager-managed limited liability corporation, "[e]very manager is an agent of the limited liability company for the purpose of its business or affairs, and the act of any manager, including, but not limited to, the execution in the name of the limited liability company of any instrument for apparently carrying on in the

8

usual way the business or affairs of the limited liability company of which the person is a manager, binds the limited liability company, unless the manager so acting has, in fact, no authority to act for the limited liability company in the particular matter and the person with whom the manager is dealing has actual knowledge of the fact that the manager has no such authority." (Corp. Code, § 17703.01, subd. (b)(2).) It further provides that the "debts, obligations, or other liabilities of a limited liability company, whether arising in contract, tort, or otherwise," are "solely the debts, obligations, or other liabilities of the limited liability company to which the debts, obligations, or other liabilities relate." (*Id.*, § 17703.04, subd. (a)(1).) They "do not become the debts, obligations, or other liabilities of a member or manager solely by reason of the member acting as a member or manager acting as a manager for the limited liability company." (*Id.*, subd. (a)(2).)

Citing Civil Code section 2343, Itkin argued in opposition to the demurrer to the original complaint that Greenfield was properly named as a defendant because an agent is responsible as a principal for acts in the course of his agency when: 1) "with his consent, credit is given to him personally in a transaction"; 2) "he enters into a written contract in the name of his principal, without believing, in good faith, that he has authority to do so"; or 3) "his acts are wrongful in their nature."[2] (§ 2343.) In sustaining the demurrer to the original complaint, the trial court concluded that Itkin failed to "identify in the Complaint or in opposition which of the circumstances named in the statute— credit extended to agent personally, agent enters transaction

---

[2] All further undesignated statutory references are to the Civil Code.

9

without a good faith belief in authority to act, or when agent acts wrongfully—applies to this case."

The FAC does not allege that Greenfield lacked a good faith belief in his authority to act on behalf of Ventura, nor does it allege any of the other statutory exceptions that permit an agent to be subject to liability as a principal. Indeed, on appeal, Itkin contends the FAC alleges that Greenfield "warranted that he was authorized to act as a managing member on behalf of [Ventura]." The trial court therefore properly sustained the demurrer to the FAC as to Greenfield.

## III. The Trial Court Correctly Sustained the Demurrer to the Breach of Contract Cause of Action

### A. The FAC fails to allege that Greenfield unconditionally accepted the offer on behalf of Ventura

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) Under the statute of frauds, a contract for the sale of real property is "invalid, unless [it], or some note or memorandum thereof, [is] in writing and subscribed by the party to be charged or by the party's agent." (§ 1624, subd. (a).) As Itkin conceded in the original complaint, Greenfield did not sign the LOI on behalf of Ventura. However, the FAC alleges that Greenfield agreed to the terms of the February 7, 2022 offer in his February 8, 2022 e-mail.

Essential to the existence of a contract is the consent of the parties. (§ 1550.) "An acceptance must be absolute and unqualified, or must include in itself an acceptance of that

10

character which the proposer can separate from the rest, and which will conclude the person accepting. A qualified acceptance is a new proposal." (§ 1585.) "To be effective an acceptance must be unequivocal and positive and must comply with the terms of the offer. [Citation.] It must be approved in the terms in which it is made. The addition of any condition or limitation is tantamount to a rejection of the original offer and the making of a counteroffer." (*Ajax Holding Co. v. Heinsbergen* (1944) 64 Cal.App.2d 665, 669; see *Panagotacos v. Bank of America* (1998) 60 Cal.App.4th 851, 855 [where appellants signed copy of real estate purchase offer but attached letter containing an additional term, they did not accept offer and the proposal in the letter constituted a counteroffer].)

" 'The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.] . . . It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.' [Citation.]" (*Oceanside 84, Ltd. v. Fidelity Federal Bank* (1997) 56 Cal.App.4th 1441, 1451.) Because Itkin does not allege any extrinsic facts that would support that Greenfield's words have a special meaning, the interpretation of their meaning is properly a judicial function.

"The words of a written instrument are generally to be understood in their ordinary and popular sense. [Citation.] The objective intent as evidenced by the words of the instrument, not the parties' subjective intent, governs our interpretation. [Citation.] '[T]he outward manifestation or expression of assent

11

is controlling [citation], and . . . what the language of an [instrument] means is "a matter of interpretation for the courts and not controlled in any sense by what either of the parties intended or thought its meaning to be. . . ." [Citation.]' [Citation.]" (*Beck v. American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1562 (*Beck*), superseded by statute on other grounds as stated in *Epic Medical Management v. Paquette* (2015) 244 Cal.App.4th 504, 516.)

In his initial e-mail on February 8, 2022, Greenfield stated that he agreed to the proposed terms pending an attorney's review of the same. Oxford English Dictionary defines "pending" as "[w]hile awaiting; until the occurrence or appearance of; until" when used as a preposition and "[r]emaining undecided; continuing; awaiting decision or settlement" when used as an adjective.[3] In his second e-mail, Greenfield asked that Itkin prepare purchase documents, which he would have an attorney review. Taken in their ordinary sense, the words of Greenfield's e-mails manifest an intent that no binding contract could come into being until Greenfield's counsel had reviewed the terms of the proposal or the purchase agreement Greenfield asked Itkin to prepare. Itkin contends that Greenfield's statements do not suggest that he *required* his attorney's approval. Even so, Greenfield declined to provide unconditional acceptance of the proposed terms until he received input from an attorney. Moreover, in addition to stating that he wished to obtain an attorney's review of the offer, Greenfield proposed two additional

---

[3]    Oxford English Dict. Online (2025) <https://www.oed.com/dictionary/pending_prep?tab=meaning_and_use#31051531> [as of Feb. 4, 2025], archived at <https://perma.cc/C9QH-YT6A>.

terms.  The FAC does not allege that this counteroffer was accepted.  The additional terms proposed by Greenfield are not reflected in the LOI.

Itkin cites *Guzman v. Visalia Community Bank* (1999) 71 Cal.App.4th 1370, for the propositions that "it is not necessarily true that any communication other than an unequivocal acceptance is a rejection," and "an acceptance is not invalidated by the fact that it is 'grumbling,' or that the offeree makes some simultaneous 'request.' " (*Id*. at p. 1376.)  Yet, *Guzman* further recognized that "it must appear that the 'grumble' does not go so far as to make it doubtful that the expression is really one of assent" and that "the 'request' must not add additional or different terms from those offered." (*Ibid*.)  Here, Greenfield conditioned his acceptance on his attorney's review of the offer, thus creating doubt as to whether his response was one of assent, *and* he added additional or different terms to those offered.

Itkin further contends that Greenfield's agreement pending an attorney's review of the terms was " 'no more than an intent to further reduce the informal writing to a more formal one' . . . . " (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307 (*Harris*).)  Under such circumstances, a prior informal contract is not negated by the failure to execute a more formal writing.  (*Ibid*.)  However, the *Harris* court acknowledged that "where the writing shows it was not intended to be binding until a formal written contract is executed, there is no contract." (*Ibid*.)

In *Harris*, "[t]he [l]etter, drafted by respondents' own counsel and signed by respondents . . . , purport[ed] to embody the 'essential terms' of the agreement" and was "signed under a signature block noting '[a]ccepted and agreed.' " (*Harris, supra*,

13

74 Cal.App.4th at p. 308.)  The *Harris* court concluded that this was sufficient to survive a demurrer.  (*Ibid*.)  It distinguished the circumstances before it from those in a prior decision, *Beck*, *supra*, 211 Cal.App.3d 1555.  In *Beck*, the Court of Appeal affirmed the trial court's order sustaining a demurrer to a breach of written contract claim, where "the writing at issue stated, ' "It is a pleasure to draft the outline of our future agreement," ' " and " ' "When we have a draft, we will discuss it and hopefully shall have a completed contract and operating unit in the very near future." ' [Citation.]" (*Harris*, at pp. 307–308, quoting *Beck*, at pp. 1562–1563.)  The *Beck* court concluded that "the terms of the writing demonstrated a manifest 'intention of the parties that no binding contract would come into being until the terms of the letter were embodied in a formal contract to be drafted by corporate counsel.' [Citation.]" (*Harris*, at p. 308, quoting *Beck*, at p. 1563.)  The circumstances alleged here, in which Greenfield expressly requested that a formal document be drafted by Itkin's attorney, for review by respondents' attorney, are therefore more comparable to *Beck* than to *Harris*.

Citing *Harris*, *supra*, 74 Cal.App.4th at page 308, Itkin further contends that the FAC "ascrib[es] meaning to [the] otherwise ambiguous language" of Greenfield's e-mail and thus states a cause of action.  We disagree.  The allegation in the FAC concerning the meaning of Greenfield's e-mail advances legal arguments based on the plain language of Greenfield's e-mail.  It does not contend that the language was ambiguous.  And unlike in *Harris*, Itkin does not allege "facts evidencing an oral agreement," or that the parties "engaged in several

14

communications, 'both written and telephonic' which 'culminated in a[n] . . . agreement.' " (*Ibid*.)[4]

The circumstances alleged here are also distinguishable from *Moreland Development Co. v. Gladstone Holmes, Inc.* (1982) 135 Cal.App.3d 973, in which the parties signed an agreement containing a provision that conditioned the buyer's obligations to purchase and close escrow upon the approval of the transaction by the buyer's board of directors. (*Id.* at pp. 975–976.) The respondent, who was the seller, argued this provision rendered the contract illusory. (*Id.* at p. 977.) The Court of Appeal observed that " 'the condition of board approval does not give respondent corporation the absolute right to escape its obligations under the agreement since there is an implied obligation on the part of the seller's officers to carry out the objectives of the contract in *good faith* by submitting the proposal to the board.' " (*Ibid.*, quoting *Jacobs v. Freeman* (1980) 104 Cal.App.3d 177, 190 (*Jacobs*).) The court noted the "pertinent" rule that " ' "[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement. [Citations.]" ' " (*Moreland*, at p. 978.) Here,

---

[4] Itkin cites *Patel v. Liebermensch* (2008) 45 Cal.4th 344, 345, multiple times in his opening brief for the proposition that "the parties reached an enforceable sale of real property agreement which was enforced by specific performance, despite an absence of agreement on duration of the escrow." The court in *Patel* focused its analysis on whether a contract was enforceable in the absence of terms specifying the time and manner of payment. (*Id.* at p. 349.) The parties had all signed the relevant agreements and amendments. (*Id.* at p. 347.) Thus, *Patel* is not instructive on the issue of acceptance.

15

Greenfield did not condition Ventura's performance of its obligations under the alleged agreement on an attorney's approval. Rather, the fact of acceptance itself, and thus the existence of an enforceable contract, was conditioned on Greenfield obtaining an attorney's opinion.[5] A party is not subject to the implied covenant of good faith and fair dealing unless they are party to a contract. (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031.)

*Karahadian v. Lockett* (1917) 33 Cal.App. 411 (*Karahadian*), similarly fails to support the conclusion that the FAC alleges that Greenfield's response constituted acceptance of the February 7 offer. In *Karahadian*, the plaintiff had an agreement with the defendant which authorized him to sell real property on behalf of the defendant and receive any deposit that might be paid on the purchase price. (*Id.* at p. 412.) The plaintiff, acting on behalf of the defendant, entered into a contract to sell real property containing terms not authorized by the defendant. (*Ibid.*) However, the defendant ratified the contract in writing and accepted money the purchaser had paid to the plaintiff. (*Ibid.*) "In addition to containing all of the essentials of a valid and enforceable contract of purchase and sale, the contract in question provided that 'upon a favorable report of the attorneys' for the purchaser concerning the title to the property, the parties thereto would enter into an agreement

---

[5] The court in *Jacobs, supra*, 104 Cal.App.3d 177, distinguished cases in which "the evidence was clear that the parties intended the contract to take effect only when the necessary approval was obtained" from a case in which *performance* was contingent on board approval. (*Id.* at p. 189.)

for the purchase of the property 'upon the terms and conditions therein mentioned.' " (*Ibid*.) The attorney for the purchaser rejected the title based on non-existent or readily curable defects and the purchaser refused to perform the contract. (*Ibid*.) Under the plaintiff's agreement with the defendant, the plaintiff was entitled to receive 5 percent of the purchase price in the event of a sale. (*Ibid*.) The trial court granted judgment in the plaintiff's favor on the ground that he "had procured a purchaser for defendant's property who had entered into a valid and enforceable contract binding him to purchase." (*Id*. at p. 413.)

The Court of Appeal affirmed. (*Karahadian, supra*, 33 Cal.App. at p. 413.) It concluded that the clause concerning the necessity of a favorable title report from the purchaser's attorneys "did not have the effect of making the contract here involved merely an agreement for an option to purchase, rather than a completed contract of purchase and sale." (*Ibid*.) "The [purchaser's] payment of the deposit of two hundred dollars on account of the purchase price was an acceptance of the terms and conditions of the contract . . . ." (*Ibid*.) The court observed that the defendant could have compelled the purchaser to perform the contract and the plaintiff was therefore entitled to receive his commission. (*Ibid*.) Here, in contrast, Itkin alleges no comparable acts by Greenfield indicating acceptance of the terms and conditions of the proposed contract.

### B. The FAC does not allege the existence of an oral contract or implied in fact contract

Itkin additionally contends that "[a]t a minimum the parties have an oral contract or an implied in fact contract." Neither argument is persuasive.

17

The FAC does not allege the existence of any conversations between Itkin and Greenfield that would support the existence of an oral contract.  Moreover, an oral agreement for the sale of real property is invalid under the statute of frauds.  (§ 1624, subd. (a)(3).)  The FAC does not allege facts that would support that Ventura is estopped from relying on the statute of frauds.  (See *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 944 ["To estop a defendant from asserting the statute of frauds, a plaintiff must show unconscionable injury or unjust enrichment if the promise is not enforced."].)

"An implied contract is one, the existence and terms of which are manifested by conduct."  (§ 1621.)  "The true implied contract, then, consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words."  (*Silva v. Providence Hospital of Oakland* (1939) 14 Cal.2d 762, 773; accord, *Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1178.)  Although the existence of an implied contract is usually a question of fact (*Unilab Corp. v. Angeles-IPA* (2016) 244 Cal.App.4th 622, 636), the FAC did not allege the existence of an implied contract based on the parties' conduct and Itkin did not advance any argument on this point below.  (See *Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.* (2017) 12 Cal.App.5th 200, 216 [affirming judgment on appeal from order sustaining demurrer where the complaint's allegations did "not exhibit any mutual intent as to the essential terms of the implied contract"].)  The FAC does not allege any conduct by Greenfield or Ventura beyond the express written language of Greenfield's February 8 e-mails.  Thus, to the extent

18

this argument was not forfeited by Itkin's failure to raise it before the trial court, it nevertheless fails.[6]

###    C.    The FAC does not allege the existence of a contract to negotiate a future agreement

Alternatively, Itkin contends that the trial court erred in sustaining the demurrer to the FAC because it alleged a contract to negotiate an agreement.  We disagree.

" 'The law does not provide a remedy for breach of an agreement to agree in the future, and the court may not speculate upon what the parties will agree.' " (*Alaimo v. Tsunoda* (1963) 215 Cal.App.2d 94, 99; see also *Vons Companies, Inc. v. United States Fire Ins. Co.* (2000) 78 Cal.App.4th 52, 59 [courts "do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there"].)

However, the court in *Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251 (*Copeland*), recognized that a breach of contract cause of action may lie for breach of a contract to negotiate an agreement "in an appropriate case."  (*Id.* at p. 1256.) It explained that "[a] contract to negotiate the terms of an agreement is not, in form or substance, an 'agreement to agree.' If, despite their good faith efforts, the parties fail to reach ultimate agreement on the terms in issue the contract to negotiate is deemed performed and the parties are discharged

---

[6]    In support of these arguments, Itkin cites *Harris*, *supra*, 74 Cal.App.4th at page 1564, a page that does not exist in that opinion.  In any event, in *Harris*, unlike here, the complaint alleged "facts evidencing an oral agreement." (*Id*. at p. 308.)  To the extent Itkin intended to cite *Beck*, *supra*, 211 Cal.App.3d at page 1564, it does not support his claim that he pleaded the existence of an oral or implied contract.

from their obligations.  Failure to agree is not, itself, a breach of the contract to negotiate.  A party will be liable only if a failure to reach ultimate agreement resulted from a breach of that party's obligation to negotiate or to negotiate in good faith.  For these reasons, criticisms of an 'agreement to agree' as 'absurd' and a 'contradiction in terms' do not apply to a contract to negotiate an agreement." (*Id*. at p. 1257, fns. omitted.)

In *Copeland*, the plaintiff sought to purchase the defendant's ice cream manufacturing plant and "made clear from the outset his agreement to purchase the plant was contingent on [defendant's] agreeing to purchase the ice cream he manufactured there," i.e., a "co-packing agreement." (*Copeland*, *supra*, 96 Cal.App.4th at pp. 1253, 1254.)  The parties signed a contract that provided they would negotiate a " 'separate co-packing agreement.' " (*Id*. at p. 1254.)  However, they could not agree on outstanding issues with respect to that agreement. (*Ibid*.)  The Court of Appeal held that a plaintiff claiming a breach of a contract to negotiate can recover for the "injury the plaintiff suffered in relying on the defendant to negotiate in good faith . . . encompass[ing] the plaintiff's out-of-pocket costs in conducting the negotiations," but "cannot recover for lost expectations (profits) because there is no way of knowing what the ultimate terms of the agreement would have been or even if there would have been an ultimate agreement." (*Id*. at pp. 1262–1263, fns. omitted.)

Although Itkin cites 12 paragraphs of the FAC he contends support a cause of action based on a contract to negotiate an agreement, he does so without discussion of the allegations set forth therein.  These allegations do not support his claim. Rather, the FAC alleges that a binding contract for the purchase

20

of the subject property existed as of February 8, 2022, and Ventura breached that contract "by refusing to open escrow on the terms [as] set forth in the Contract in order to consummate the sale of the Property to Plaintiff." It does not allege that the parties contracted to negotiate an agreement or that Ventura breached that contract by failing to negotiate in good faith. Further, Itkin's cause of action for specific performance seeks an order that the defendants "transfer[ ] the property to [Itkin] under the terms set forth" in the parties' contract, not an order that the parties negotiate in good faith to reach an agreement for the sale of the subject property.

We therefore reject Itkin's claim that the FAC alleged a contract to negotiate a future agreement.

## IV. The Trial Court Correctly Sustained Respondents' Demurrer to the Specific Performance and Declaratory Relief Causes of Action

Itkin advances no arguments concerning his specific performance and declaratory relief causes of action on appeal and thus forfeits any contention that the trial court erred in sustaining the demurrer as to these causes of action. "On appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]" (*People v. Giordano* (2007) 42 Cal.4th 644, 666.)

Even if the argument were not forfeited, we would conclude the trial court did not err in sustaining the demurrer as to both causes of action. A claim for specific performance necessarily fails in the absence of an enforceable contract. (*Darbun Enterprises, Inc. v. San Fernando Community Hospital* (2015)

21

239 Cal.App.4th 399, 409 ["To obtain specific performance, a plaintiff must make several showings, in addition to proving the elements of a standard breach of contract. [Fn. omitted.]"]; *Dunner v. Hoover* (1941) 43 Cal.App.2d 753, 757 ["In order to entitle a litigant to the specific performance of a contract, he must first allege an enforceable contract and his passing of an adequate consideration."].)

Further, " '[d]eclaratory relief operates prospectively, serving to set controversies at rest. If there is a controversy which calls for a declaration of rights, it is no objection that past wrongs are also to be redressed; but there is no basis for declaratory relief where only past wrongs are involved. Hence, where there is an accrued cause of action for an actual breach of contract or other wrongful act, declaratory relief may be denied. [Citations.]' [Citation.]" (*Baldwin v. Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393, 407.) In *Baldwin*, a panel of this Division held the trial court correctly sustained a demurrer to a declaratory relief cause of action that was based on the conduct alleged in connection with the complaint's other causes of action, there was no allegation of a continuing relationship between the parties, and there were "no claims by plaintiffs that an actual controversy exists between plaintiffs and [the defendant] concerning *any* future rights." (*Id.* at p. 408.)

Similarly, here, Itkin's declaratory relief cause of action rests on the same conduct alleged with respect to his breach of contract cause of action. Further, it alleges "[a]n actual controversy exists between Plaintiff and Defendants concerning the Contract," but does not allege the existence of any ongoing relationship between the parties or that the controversy concerns any future rights.

22

The trial court therefore properly sustained the demurrer as to the specific performance and declaratory relief causes of action.

## V.  Itkin Fails to Establish that the Trial Court Abused Its Discretion in Sustaining the Demurrer to the FAC Without Leave to Amend

To satisfy the burden of proving there is a reasonable possibility of amendment, "a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.]  The assertion of an abstract right to amend does not satisfy this burden. [Citation.]  The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it.  Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)

The only argument Itkin appears to make about the possibility of amendment, located under the heading claiming the existence of a contract to negotiate an agreement, is that Itkin could claim promissory estoppel and "allege reliance on [Greenfield]'s promise based on securing loan financing for this transaction on March 24, 2022."  However, adding an allegation concerning reliance fails to remedy the fact that the February 8 e-mail does not contain any promise to negotiate a contract, nor does it address the defects in Itkin's breach of contract cause of action.  The trial court did not abuse its discretion in sustaining the demurrer without leave to amend.

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, J.


We concur:


EDMON, P. J.


HANASONO, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.